JONATHAN ROSE, Respondent, v. JACOB A. LEWIS et al.,
Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, NOVEMBER, 1870.)

A final accounting of administrators before the surrogate, and their dis-
charge upon a decree duly made and entered therein, which allows and
ratifies their payment of a judgment against the intestate, is a bar to an
action, by a judgment creditor of the estate, against the administrators
and creditor in the judgment so paid, to set the same aside as fraudulent
against the plaintiff and his judgment, and to recover the amount, from
the administrators, paid thereon, as fraudulently and collusively paid by
them under an *ex parte* order of the surrogate, where such plaintiff
has been made party to the proceedings for accounting by service upon
him of a citation therein as the statute (2 R. S., 94, § 65) provides.
It is a bar, also, to a recovery, against the creditor who has received
the payment on the alleged fraudulent judgment; especially where the
latter was also party to the proceedings for final accounting.
The determination of the Surrogate's Courts, upon the final accounting of
administrators, &c., in regard to payments claimed and allowed for debts,
&c., is, not only that they have been made, but also that they have been
properly and lawfully made.
Where the proof of service of citation, on a creditor of the estate, to
attend the final accounting by its administrators, consisted in allegations
of fact, contained in the record of such proceedings, showing jurisdiction
of the surrogate therein.—*Held*, that there was *prima facie* evidence of
such service, and that the creditor was bound by the decree.

THIS was an appeal by the defendant upon a case and
exceptions from a judgment entered in favor of the plaintiff
upon a referee's report.

The complaint demanded, that a certain judgment obtained
by the defendant, Lewis, against one H. K. Wilgus, in the lat-
ter's lifetime, should be declared fraudulent and void as against
a judgment obtained by the plaintiff against the defendants
Cook and White as administratrix and administrator of the
estate of Wilgus, and for other relief.

It appeared, that Hezekiah K. Wilgus was in his lifetime
indebted to two certain firms for merchandise purchased, in the
amount of some $3,000; that he died in December, 1862,

intestate, and in the same month the defendant, Cook (then Wilgus and widow of the intestate), and White being duly appointed, qualified as administratrix and administrator of his estate. That in February, 1864, one of the firms above mentioned sued Cook and White as representatives of the personal estate of Wilgus, to recover the amount which Wilgus had owed it, and after suit commenced assigned the claim to the plaintiff, who recovered judgment therein on the 5th April, 1857, and also obtained an assignment of the claim of the other firm mentioned, and obtained judgment thereupon against the administrators on the same day (April 5th, 1857), and that the judgments were duly docketed, &c. That the administrators filed an inventory, and proceeded to collect and administer the estate, and had in their hands, in April, 1864, assets equal in value to between $11,000 and $12,000.

That in February, 1855, Wilgus had executed to the defendant, Lewis, his son-in-law, his notes, payable on demand, for $8,000, which were put in suit four days after, and judgment recovered thereon by default for the face thereof, with costs, which was duly docketed, &c.

That in April, 1864, after commencement of the suits against the administrators, a citation was issued by the surrogate of the proper county, upon the petition of the defendant, Lewis, citing Cook and White as administrators to appear before him and show cause why the judgment of Lewis should not be ordered paid. Cook and White only were served with the citation, and had notice of the proceedings; and that on the 15th of April, 1864, pursuant to an order granted by the surrogate in such proceedings, the defendants, Cook and White, paid over to Lewis, in cash and securities, $11,334.68, upon his judgment.

That Lewis, the same day, repaid Cook and White, or White only, $8,000, and took their note for that sum; which sum was then invested by White, with Cook's approval, in government bonds, and held by them until in July, when the bonds were delivered to Lewis, and the note destroyed.

That some two or three months after, Lewis returned the bonds to White, to be in some way invested for his benefit.

That the payment of the moneys upon the judgment exhausted the entire assets of the estate of Wilgus, excepting about $200, retained by the administrators by direction of the surrogate.

That after these proceedings, answers were put in, in the suits in which judgment was recovered afterward as above stated, against the administrators, setting up the proceedings before the surrogate, and the payment made under the order therein; and these proceedings were given in evidence upon the trials; in which trials, evidence to impeach the judgment of Lewis for the alleged fraud was offered by the plaintiff therein, and rejected upon objection of the defendants. A written notice was given personally to Cook, and by mail to White, after commencement of this suit, on behalf of the plaintiff, requesting them to commence a suit to recover the bonds delivered to Lewis, on the ground of the fraudulent character of his claim, or to unite with him in a suit for that purpose, and offering indemnity against costs; to which notice no attention was paid. No execution had been issued upon the judgments recovered against the estate of Wilgus, nor had any application been made to the surrogate for leave to issue it. Other facts appeared touching the question of fraud in the claim and judgment of Lewis as against the judgments of the plaintiff; and evidence was given of proceedings in a final accounting of the administrators, and the allowance therein of the payment of the Lewis judgment, as stated in the opinion.

The referee reported that the plaintiff was entitled to judgment against all the defendants, for the recovery of the amount of the two judgments, with interest and costs, with leave to apply for a receiver, &c.

*Pomeroy & Southworth*, for the plaintiff.

*E. J. Richardson*, for the defendant.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court — TALCOTT, J.   Without considering the effect of the former adjudications between the plaintiff and the administrators, in the actions commenced by the plaintiff against them, as administrators, to recover the debts which this suit is instituted to recover, and in which, whether necessary in those actions or not, substantially the same issues which are presented in this action seem to have been made and decided against the plaintiff, I think the final accounting and discharge of the administrators before the surrogate of Oneida is a bar to the present action, if the plaintiff was made a party thereto by such service of the citation as the statute prescribes. The statute itself declares that such final accounting shall be conclusive, as to certain questions, upon all those who have been made parties in the manner provided by the statute. (2 R. S., 94, § 65.)

Among the things which the statute declares shall be deemed concluded by the determination of the Surrogate's Court on the final accounting, is the fact that the charges made in such account for moneys paid to creditors are correct.

There is no finding in the case that the proceedings upon this final accounting were fraudulent as against the plaintiff, nor does the complaint, although it alleges the final accounting, contain any allegations touching the manner in which it was procured sufficient, if true, to enable a court of equity to set it aside as fraudulent and void, as against the plaintiff; and the judgment which has been entered in the case, while it proceeds formally to set aside and declare null and void for fraud the order made by the surrogate, on the application of defendant Lewis, that the administrators pay the judgment in his favor, yet leaves the judgment or determination of the surrogate upon the final accounting wholly intact, and in full force and effect.

The gist of the complaint in this action is, that the judgment which the defendant, Lewis, held against the intestate was without consideration, originally recovered by collusion with the intestate and to defraud his creditors, and subsequently kept on foot for the same purpose; and that the same

was fraudulently and collusively paid out of the assets by the administrators, well knowing that it constituted no just claim against the estate. This is clearly a matter which might, and ought to have been, litigated before the surrogate upon the final accounting; and the plain intent of the statute is, that the final judgment of the Surrogate's Court, so long as it remains in force, shall be conclusive upon such questions of fact as are sought to be litigated in this case. The determination of the Surrogate's Court, that the payments claimed by the administrators are correct, is, not only that the moneys claimed to have been paid on debts and legacies have in fact been made, but also that they have been properly and lawfully made; otherwise the final accounting would be a very idle ceremony, and form no substantial protection to the administrators against any number of future litigations drawing in question the legality and validity of their acts, which it was obviously intended should be tried and determined in the Surrogate's Court. (*Stiles et al.* v. *Burch*, 5 Paige, 132; *Wright et al.* v. *The Trustees*, &c., 1 Hoff. Ch. R., 202.)

On the argument, it was orally stated, on one side, that the plaintiff in this case had not been made a party to the final accounting in the Surrogate's Court, in the manner prescribed by the statute, which statement was denied on the other side. On looking into the case, it does not appear that this question was at all litigated or received any attention on the trial. It was claimed, on the argument, that the plaintiff, being a resident of the county of Oneida, before the surrogate of which county the proceedings took place, was entitled to personal service of the citation. No direct evidence appears to have been given on the question of the plaintiff's residence; but that he was a resident of Westmoreland, which is in Oneida county, perhaps sufficiently appears incidentally in the testimony. Probably the residence of the plaintiff was well known to the referee and all the other parties engaged in the trial, and was assumed.

The only proof touching the publication and service of the citation is that to be found in the records of the proceedings

Rose v. Lewis.

before the surrogate which was introduced in evidence, and so far as relates to this question it is as follows :

1. A petition of the administrator and administratrix for a final settlement and accounting, addressed to the surrogate of Oneida, and duly verified, bearing date June 4, 1864.

2. The surrogate's order of the same date, that a citation issue to all persons interested in the estate of Hezekiah K. Wilgus, to attend the final settlement of the accounts of the administrators of the estate of the deceased on the 26th day of July, 1864, at Utica.

3. The citation of the same date, in the proper form under the seal of the Surrogate's Court, returnable according to the order.

4. An affidavit of the publication of the citation once in each week for four successive weeks, commencing June 10th, 1864. (I assume the publication to have been of the citation. The affidavit calls it an advertisement of which a copy is annexed, but the paper annexed does not appear.)

5. An affidavit that the deponent is acquainted with the several persons whose names purport to be subscribed to the annexed admission of service of citation, and that the signatures are genuine. (Here, as in number four, the paper annexed to the affidavit is not contained in the case, so that we do not see what the admission was or by whom signed. The missing paper would probably set at rest any dispute on the subject.)

6. An order of the Surrogate's Court made September 12th, 1864, reciting that the administrators had rendered their account and referring it to an auditor to examine and report therein.

7. The minutes which give the dates of the various proceedings and adjournments, containing under date September 12th, 1864, " administratrix and administrator appeared and made proof of service and publication on citation."

8. The auditor's report stating the account and crediting the administrators with the sum of $11,334.68, as paid on

the judgment in favor of the defendant, Lewis, which is in question in this case.

9. The final and formal decree of the surrogate reciting the previous proceedings, and stating that the administrators appeared on the return of the citation and made proof of the due service and publication of the citation, and stating the account, giving credit to the administrators for the amount paid on the Lewis judgment, and adjudging that the proceedings of the administrators in the settlement of the estate be confirmed, and adjudging that they have "fully and faithfully administered the personal estate" of the decedent, except as to the sum of $200, which by the decree they are directed to retain for the purpose of paying certain costs by them incurred, and adjudging that they pay over to Lewis any balance of the $200, which may remain after the payment of such costs to apply on his judgment.

It is a well settled doctrine, says the court in *Barber* v. *Winslow* (12 Wend., 102), that the record of a court of special and limited jurisdiction which contains allegations of facts, showing jurisdiction in the particular case, is *per se* sufficient to uphold the judgment until the contrary is shown.

In this case it does not appear to have been disputed on the trial, but that the plaintiff in this action was duly and according to the statute cited to appear before the surrogate on the final accounting; and I think, within the doctrine laid down in *Barber* v. *Winslow*, the decree of the surrogate is *prima facie* evidence of the fact.

If so, the plaintiff was a party to that proceeding, and is bound by the decree, which is the adjudication of a competent court upon the very matter sought to be again litigated in this action.

I think the final decree of the surrogate is a bar to this action not only in behalf of the administrator and administratrix, but also as to the defendant, Lewis. His liability is, so to speak, secondary, that is, it depends upon the question whether the administrators are liable upon the alleged fraudulent *devastavit*. It is through, and based upon, the alleged

liability of the administrators that the plaintiff claims to recover back the money which he alleges they fraudulently paid to Lewis on his judgment.

Moreover, Lewis was, by means of the citation, a party, to the same proceeding.    His rights are adjudicated by the same decree, which is binding also upon him.

As the question as to the effect of the final accounting seems to have received little or no attention on the trial or from the referee, and it may be that the case does not disclose the actual facts concerning the service of the citation, instead of a mere reversal of the judgment, a new trial should be ordered, costs to abide the event.

Judgment reversed and new trial ordered, costs to abide the event.