Mr. Justice Westcott
delivered the opinion of the court.
This is an appeal from a judgment of the Circuit Court for Duval county. The action was ejectment for a lot of land in the city of Jacksonville.
Plaintiff (appellant here.,) claimed title through deed of her mother, Sarah A. Houston, bearing date the 24th day of November, A. D. 1854. Defendants (appellants here,) claim title through sale by William A. Houston, administrator of the goods and chattels of Sarah A. Houston, plaintiff's mother and grantor in the deed mentioned. The administrator's deed is dated the 27th day of September, A. D. 1866. The deed to plaintiff was not recorded until September 2, 1875. It is not claimed that the purchaser at the administrator's sale had notice, either actual or constructive, of the deed of the deceased intestate to her daughter, the plaintiff.
In the Circuit Court the defendants claimed that there was no delivery of the deed of the deceased intestate to the plaintiff. In the view we take of the case that question is not material, as it may be admitted that there was a delivery, and it would not affect olir conclusion. We treat the case, therefore, as if there was an admitted delivery. The plaintiff, upon the opening of the trial, having introduced her deed from her mother with evidence as to the delivery, rested. The defendants introduced deeds designing title under a sale by the administrator of the intestate, by virtue of an order of the Judge of Probate of Duval County The plaintiff not objecting to the deeds at the time they were offered, subsequently introduced the record of the Probate Court of Duval county in the matter of granting letters of administration to William H. Houston, as well as the matter of sale under the order of the Probate Court. There were no exceptions to testimony on the trial having any material bearing upon the question presented for the consideration of the court.
Plaintiff in the Court below (appellant here,) claims that whether the record of the proceeding of the Probate Court was sufficient to show jurisdiction in that court to order a sale of the land was a question of law which the court should have decided, the court having left the whole matter to the jury, under general instructions covering collateral inquiries into sales of land by administrator under or- *38 of the Probate Court. The action of the court here in admitting the deeds without showing the power under which executed, was not excepted to. The general rule upon this subject is that, if a deed purport to have been executed under a power, either of a private or of a public and statutory naturé, and is sought to be used in evidence, the power must be shown. (1 Tay., 25; 14 Wend., 619; 4 Mon., 392; 2 Ran., 93; 4 Mon., 39; 4 Pick., 160; 13 John., 307; 2 G. and J., 114; 2 Bing., 483; 8 T. R., 178; 2 East, 66; 5 How., 370; 11 Wend., 125, 422; 3 Mon., 99.)
Had .the plaintiif objected to the introduction of the administrator’s deed when offered, the record of the Probate Court authorizing the sale must have been presented. This having been done, the ’question whether the court had jurisdiction would have arisen. This question it would have been the duty of the court to decide. When, however, the plaintiff makes no objection to the admission of the -deed without showing the power, introduces subsequently the record of the Probate Court, does not ask the court to pass -upon the. sufficiency of the deed,’and relying upon instructions of the court covering the subject, leaves the entire question, under instructions of the court, to the jury, he cannot object in an Appellate Court to this action. Under such circumstances the question here presented is whether, upon the evidence, the finding of the jury was -erroneous.
This brings us to the consideration of the first two errors assigned, which are that the verdict was contrary to the Jaw and the evidence.
It is insisted that the proceedings of the Probate Court were shown by the records introduced by the'plaintiff to be void, both as the matter of the administration as well as to the sale by the administrator. 1
In the matter of the administration, the-record discloses a petition of William H. Houston, alleging that his mother, Sarah A. Houston, died intestate, having at the time of her ’ death a mansion house and place of abode in Duval county; .that he is .entitled to a distributive share of the estate, and prays grant of letters of administration. There is proof of publication for thirty days of notice of intention to apply for such letters of administration, an oath conforming to the • •statutory requirements, a grant of letters in the usual form, and a bond. It is insisted that, in addition to what is above set forth, the petition should state that the applicant was twent}r-one years of age; that citation was published for the term of six weeks, once a week, in some newspa-' per; that his exact relationship to the deceased intestate in the order of consanguinity should be stated; that the oatl should be filed in the' office of the Clerk of the Circuit Court; that the appraisement should show the number of the intestate’s family and the property they had exempted.
As to the matter of citation. No citation is required where the husband or wife of the deceased intestate, or a person entitled to the distribution of the estate in the order of consanguinity, applies for letters. Here the party applying alleges that the intestate was his mother. He was the son of the intestate and one of the heirs and distributees. It is only where the grant of letters of administration is to be to “a creditor of the intestate or some fit person,” other than the husband, wife or person entitled to distribution, that any citation is necessary. The oath was. properly filed in the office of the Judge of Probate. Under the organization of the courts of the Territory of Florida, the! County Courts had jurisdiction of matters of administration. These courts had a clerk, and it was in his office that the oath was to be filed. The Probate CouTt, as * organized by the Constitution of the State, had no clerk. All laws of the Territory not repugnant to the provisions of the Constitution were continued in force by «that instrument, and the appointment of a Judge of Probate in each county, with the powers of the Territorial County Courts, was provided for, and the necessary consequence was that the office of the Judge of Probate and not the office of the Clerk of the' Circuit Court was the proper place in which to file the oath. As to the matter of the appraisement it is immaterial whether one was ever made or not. The grant of the letters of administration preceded it and their validity in nowise depended upon it. As to the fact that the party applying was twenty-one years of age: Where the grant of letters is questioned collaterally, it is not necessary that the record should affirmatively state the qualification of the party to whom the letters were granted. And, generally, as to the necessity of a petition at all, it may be remarked that the statue requires none.
The judicial officer had a general and exclusive cognizance of the matter of granting letters of administration. The only facts necessary to give the Probate Court jurisdiction were the death of the intestate and possession at the time of death of “any goods, chattels or lands in any county in this State.” Here the petition alleges that the deceased intestate had a “mansion house in the county of Duval,” and the record discloses that she was, at the time of her de'ath, possessed of goods and chattels in the county of Duval, and the grant of letters in that county carries the right to execute the trust until it is vacated or set aside by some direct proceeding. (3 Wall., 403; 12 Wend., 102; 28 N. Y. R., 641; 13 Kan., 527; 62 Ill., 150; 39 Ill., 563; 42 Ill., 149; 24 Mo., 266; 27 Vmt., 581.)
Thus disposing of the question of jurisdiction, so far as it concerns the- granting of letters of administration, we next inquire as to the matter of the sale of the land by the administrator.
It is insisted that it appeared from the record of the proceedings in the matter of the sale by the administrator that the court had no jurisdiction of the subject matter, no ju risdiction of the cause, and that the sale was void.
The following positions are taken and insisted upon:
That, in order to confer jurisdiction on the Probate Court to order the sale of real estate, the petition of the applicant in either cabe should contain such statements as would make it good upon demurrer; that the record should show that the personal assets had been exhausted; that the amount of the debts existing and the amount necessary to supply the deficiency should be shown, as well as that the land was sold in front of the Court House door of the county on the first Monday in the month. There can be no objection that the amount of the indebtedness should be set up in detail here. The statute requires no such allegation. It appears from this record that there was an indebtedness, and that is sufficient, even if the appellants view that such indebtedness must affirmatively appear in order to give jurisdiction, a question which it is here unnecessary to decide. (3 Wall., 405, 406.) It appears from the record that the notice of the sale was given. Any irregularity of the character alleged in this sale after due notice, if the jurisdiction attached under the previous proceedings, cannot affect the sale in a collateral proceeding. The deed is not open to assault upon such ground. Nor is it necessary that the record should disclose what is the* precise amount of the deficiency of personal assets. It is only necessary that it should state in a. proper manner that there was an exhaustion of personal assets. These matters relate to the regularity of the proceeding and are to be corrected upon certiorari, writ of error, appeal, or some other proceeding by which errors and irregularities are reviewed. The question here is one of power and jurisdiction.
Having disposed of these questions, it is necessary to state the precise condition of this 'record in order to understand the exact question presented in the Circuit Court and *39 in this Court. The petition here filed sets up that the personal estate is not sufficient for the payment of .the debts, and that the premises cannot be equally and fairly distributed among the heirs of the deceased, intestate. 'There is no testimony in the record. The order of the court contains a recital as .follows: “The administrator having shown to the court that the four week’s 'notice has been given files his application for an order to sell certain real setate for the purpose of paying debts and, of distribution of the heirs of the deceased, and having shown that the 'personal assets are exhausted, it is therefore ordered.” The remainder of the order simply authorizes a sale and directs compliance with the statute regulating the sale.
The petition here fails to set forth any case of which the Probate Court has jurisdiction. Hence it follows that if it is essential in this State that an administrator should file a petition setting up the facts necessary to give jurisdiction to the Probate Court in the matter of the sale of lands of intestatev'estates under its order, then there is here no juris-’ diction in. the court, and the sale is void. If, on the other hand, there is no necessity for such petition and the recital of proof, the jurisdictional fact in the order of sale and, evidence of giving the notice of the intended application, both of which appear in this record, are sufficient, then there was jurisdiction, and the deed was not void.
To these questions we address ourselves. The court in the case of Hays vs. McNeely, (16 Fla., 413,) stated that in order to show jurisdiction the petition for the sale should set out, either in words or substance, that the personal assets are exhausted; that this fact should at least appear from the record; that it was a jurisdictional fact necessary to.be alleged or to .appear in order that the court could authorize the sale by the administrator. In that case no such fact was alleged, in the petition, nor did the order of sale made by the court recite that it was shown as in this case. That case is therefore different from this. Looking to the particular character of our statute and the decisions of the courts in cases where the statutes are similiar to ours, we are of the opinion that the recial of a finding of the jurisdictional fact by the court is sufficient to make a prima facie case of jurisdiction upon a collateral enquiry of this character, under the circumstances of this case, and that the failure to file any petition at all .would not be fatal under our statute. “Real estate shall be considered assets in the hands of executor or administrators, and after the personal assets are exhausted may be sold under an order or;, decree from the Judge of Probate or officer discharging* the functions of ordinary of Judge of Probate, such sale always to be made after-public notice th'ereof, to be given in like manner as in bales of real estate upon execution from the Circuit Courts of this State, and always at public auction, to the highest bidder; Provided, however, in every such case that no sale of Teal estate shall be made to any greater extent than shall be necessary to supply the deficiency of personal assets for the payment of the just and lawful debts of the deceased, nor’shall any such sale be ordered without notice for at least four consecutive weeks previously given in some public newspaper nearest to the place where such real estate is situated, of the intended application for such order or decree.”
“It may and shall be lawful upon such notice for the Judge of Probate, or officer discharging the functions of ordinary or Judge of Probate, to order or decree a sale in like manner of the real estate of any deceased person in preference to a sale of the slaves, where it may be necessary for the payment of just and lawful debts,” &c. (Thomp. Dig., 203, 203.)
The sale of lands in preference to slaves, it is seen, is expressly authorized “upon such notice” as is required by the preceding section for the sale of lands after exhaustion of . personal assets, and it is but reasonable to conclude that a sale upon notice, in either case, was all that the Legislature intended should be required.
Looking to all of the legislation, upon the subject of the Probate Court in this State, it is evident that the Legislature did not intend it should be a forum where all of the niceties and strict rules and system of pleading in ordinary actions at law should prevail.
A careful examination of the first section here recited shows that there is no statutory requirement of a petition or written pleading of any character in the matter of sales of lands by administrators to pay debts after exhaustion of personal assets.
In this case the notice of intended application is given in a newspaper as required, and the fact of exhaustion of personal assets is recited in the. decree as a fact shown. While the better practice, no doubt, is to file a petition setting up a schedule of debts, the .fact of exhaustion of personal assets, and ’other proper facts in the case, yet in the absence of such statutory requirement, and there is otherwise a strict literal compliance with the law, coupled with a recital of the jurisdictional fact in the order of sale, we cannot see that anything in addition to what is prescribed by the statute controlling the subject can be required by this court.
There are cases in which it is held that a petition is necessary, but it will be found upon examination that the statute controlling the subject differs materially from the statute of this State. Under the revised statutes of New York, (2. R. L., 39; 20 Wend., 240,) it was required that the petition should set forth the amount of the personal property and the outstanding debts, and the Court of Appeals of the State in Ford vs. Walsworth, (15 Wend., 405,) held that these facts not appearing in the petition and no proof of them being presented, there being no such recitals in the deed, it did not appear that the surrogate had jurisdiction in the matter.
Under the statute of California, a petition setting up the jurisdictional facts is required, and the Supreme Court holds that it is essential. (50 Cal., 398.) We say nothing as to the correctness of these decisions, and they are mentioned only to show the difference in the statutes of these States and ours. So far as we have been able to examine the cases, we find that wherever it is held essential to the jurisdiction of the court that a petition should be filed, the statute requires it.
We think, under our, statute, that the recital in the order of sale that exhaustion of personal assets was shown, is sufficient to make at least a prima fade case of jurisdiction. Whether it 'is conclusive we do not say, as that question is not here involved. In the absence of any statutory requirement as to a petition and its contents, the principle controlling the subject is such as is announced in other cases which treat of the exercise of like special powers and statutory authority. In Barber vs. Winslow, (12 Wend. 102,) an inssolvents discharge was brought before the court collaterally, and it was held that the discharge was, per se evidence sufficient of the facts indispensable to give jurisdiction to the officer, and that the officer had jurisdiction might be proved by retying on the facts set forth in the discharge, the court remarking that the record of a court of limited and special jurisdiction which contains the allegation showing jurisdiction in the particular case, is per se sufficient to uphold the judgment until the contrary is shown. See also as involving the same principle, 11 Wend., 249; 3 Wend., 47; 29 N. Y., 106; 2 Wall., 310; 1 Brod. & Bing., 137.
In treating of this principle the Supreme Court of Alabama remark that “whether the jurisdictional fact actually existed cannot be collaterally inquired into if the tri *40 bunal to whose cognizance the' question, is referred determined it to exist, but if the record fails to show the fact, either actually or by the determination of the court, then the basis on which the right to the special remedy rests is wanting, and the whole proceeding ' is void.” "We think these cases settle the principle which controls -this case. The statute not requiring a petition, its absence does not Tender the proceeding void, and the court having found that an exhaustion of personal assets was shown, the sale under tire circumstances of this case was not void.
This brings us to the last question, and that is which of the deeds here prevails, the unrecorded deed of the deceased intestate, or the recorded deed of her administrator following an order of sale by the Probate Court, the purchaser being in possession. Our statute upon the subject of recording conveyances of real estate provides that “no conveyance, transfer or mortgage of real propetry, or of any interest therein, shall be good or effectual in law or equity against subsequent purchasers for a valuable consideration and without notice, unless the same shall be recorded in the office assigned by law for .that purpose.”
Upon general principles a sale of an administrator for a valuable consideration and without notice, vests the title in the purchaser to the same extent that a-like deed by the heir would where there were no debts. The power of the administrator to sell, as well as the power of the Probate Court to direct a sale, is not a power to be exercised at discretion, but is conferred under a state of circumstances defined and fixed by law. Upon the decree of the court and sale, all the right and title of the intestate, as well as the heir and administrator, passed to the purchaser. As to the general disposition of intestate estates, the Legislature has plenary power. If, upon the death of the ancestor, any title passed to the heir or administrator, it was by .’the decree under the law divested, and the sale under the power by the administrator was potential to pass the entire interest. (2 Pet, 523; 16 Fla., 416; 16 Fla., 154; 2 Fla., 94; 3 Fla., 175)
"We take it, therefore, that there is no difference in principle between such a deed by an heir and such a deed by an admr Ltrator. Some of the cases upon this subject hold that the second deed is inoperative, because, in the view they take of it, after the first deed nothing was left to descend to the heir, or to pass as an asset to the administrator. "We do not think this is correct, for the reason that an unrecorded deed does not, under the law, vest an absolute estate. Under the recording statutes, the absolute title rests with the grantor in abeyance, and does not irrevocably pass to the grantee until the deed is recorded. There is such an estate left in the grantor as, upon the recording of a subsequent conveyance to a Iona fide purchaser for value without notice, divests the' entire estate passed by the prior unrecorded deed. If the intestate were alive, his second deed to such a purchaser for value would pass the estate. Does the estate upon his death pa^s absolutely to the first grantee? Unquestionably not; for what he has goes either- to the heir or administrator. The statutes of descents and distribution direct nothing of the kind. Upon the death of the intestate, his heir, in the absence of debts, his administrator, viewed in reference to the Probate Court, upon exhaustion of personal assets, stands, according to the true intent and meaning of the statutes controlling the subject of intestate estates and descents, in the same place as the intestate. The administrator is his legal representative, with defined powers, and, so far as .this matter is concerned, the power and estate which existed in the intestate before.his death passes-to his administrator, acting under the order of a court having jurisdiction.
The estate or power existing in the grantor where there is an unrecorded deed, must have either ceased to exist or have gone to the heir or administrator. There is nothing from which it can be inferred that the unrecorded deed by the death of the intestate became of any greater force or effect. Looking to the intention and object of .the Legislature in passing the recording statutes, it is clear that' 'the evil which they intended to remedy attaches as well to apparent ownership in the heir or administrator, as in the deceased intestate when alive. The object of this statute is to make patent, to difeclose to the world the holder of the legal title, in order that purchasers for value might be protected against the secret deeds of the grantor. No deed being recorded, the title is apparently in the grantor, and the law protects the party who expends' his money on the basis of this apparent ownership. In the case of his death, his heir or his administrator, with a decree of the court authorizing a sale, is the apparent owner of the legal title, and it is equally as important and equally as just that the public should be allowed to deal with them as with the original grantor if living. The cases upon this subject (15 III., 158; 2 S. & R., 44; 3 Yerg., 346; 39 Mo., 110; 4 Mon., 120; 6 B. Mon, 531; 24 Conn, 211; 46 Mo., 239,) are conflicting, but we think that the doctrine we have stated is correct.
The third error here assigned is that the verdict was contrary to the charge of the .court. In what respect this is thought to be true by the appellant, neither the record nor his brief discloses. The charge of the court was principally as requested by plaintiff, and if there was any error it was not to his prejudice.
The fourth assignment is that the charge of the court was conflicting. While the charges which it ’is claimed are conflicting are named, thé appellant does, not inform us in what respect there is conflict. Without entering into any elaborate criticism or comparison of the charges, we will only say that no such matter was called to the attention of the Circuit Court, no ruling of that court was had upon the subject, and no exception to action involving the matter is in the record for review. It is not enough in this court to simply state an assignment of error. If nothing more than this is done and the appellant attempts in no way'to show error, it is an abandonment of the assignment.
In addition to this, upon an examination of the charges, we can find no necessary conflict. There are some charges that are necessary and more charges than the points arising out of any reasonable. and fair construction of the evidence required.
The judgment is affirmed with costs.
. Afterwards the appellants filed the following petition for a rehearing:
The petition of' Margaret E. Emerson, appellant in the above entitled cause, by her attorneys, Knight and Jordan, respectfully showeth to this honorable court that in the opinion and decision rendered by the court in said cause the following point made by appellant in the printed brief submitted’to this honorable court, was not covered as fully as appellant deems the nature and justice of the cause demands, and that said point was one of the principal points 'relied upon by appellant in the prosecution of her cause. Said point is as follows, to-wit:
“In order to sell the real estate the administrator should show that the personal assets had been exhausted, said sale to be made after public notice like sales of real estate upon execution from the Circuit Court of this State. And no sale of real estate shall be made to any greater extent than shall be necessary to supply the deficiency of personal assets for the payment of debts of the deceased, (Thomp. Dig, pages 202-203, Sec. 2.) The record does not show that' the personal assets had been exhausted, and the *41 amount necessary to supply the deficiency,or even what the debts were. Neither does.it-show that*the Judge of Probate directed or limited the sale only to an amount SUFFICIENT to supply THE DEFICIENCY."
Your petitioner * further shows, that the point made by her in paragraph 9, on pages 3 and 4 of the printed brief submitted by her to this honorable court, was not passed-upon, or not fully passed upon by the court, in the opinion rendered in said cause, and that said point was also one of the principal points relied upon by her in the prosecution of‘her cause. Said point is as follows:
“The petition for the sale of real estate in this case contained statements upon its face sufficient to have precluded the Probate Court from exercising jurisdiction to order the sale. It evidently comes under section 6, page 203, of Thompson’s Digest, and not under section 2, of pages 202 and 203, and contemplates proceedings in the Circuit Court instead of the Probate Court. In such a case the petition should set forth that the personal estate of the intestate is not sufficient for the payment of the debts of the intestate, or that the real estate cannot be equally, > fairly and beneficially divided without such sale. The petition should also describe the real estate, the names of the heirs or devisees, stating particularly which are of age, and which are infants and femmes covert, in case the estate is sold to effect a divison; and in case the sale is for the payment of debts, the amount of the debts, to whom and when due, and the nature and evidence by which they are established.
“By section 2, page 202, Thompson’s Digest, the Probate Court could only order a sale of real estate for the payment of the just and lawful debts of the deceased.
“The order of sale in this case was for the purpose of paying debts, and of distribution among the heirs. The petition for sale states that the personal estate is ‘not sufficient’ for the payment of the debts of the intestate; and also that it cannot be fairly and equally distributed among the heirs of the intestate unless sold. Therefore the petition and order of sale, brings it under section 6, page 208, Thompson’s Digest, and the sale should have been made by order of the Circuit Court.
“Therefore the Probate sale was null and void. The latter part of section 6 is, in no respect, complied with.”
Your petitioner further shows, that the opinion rendered by the court in said cause contemplates that in the point made by* the appellant, the charges given by the court below were conflicting. No conflict in said charge was pointed out to this court by appellant; whereas, on appellant’s printed brief, page 10, appellant distinctly pointed out the conflict in said charges of the court below, as follows, to-wit:
“The next point we make is that the charge of the court was conflicting. Charge seventh, for plaintiffs, and charge seventh for defendants, are in conflict in this: That for the plaintiff the court decided that the Probate Court never had jurisdiction; and hence, charge seventh for defendants, should not have been given. Charge tenth, for defendants, is also in conflict -with charge seventh for the plaintiffs.
“Charges three and four, for defendants, are in conflict with the charge given for plaintiffs, on the same subject. The first charge given by the judge of his own accord is in conflict with the charge on the same subject-matter, given by him at the request of the plaintiffs.”
Por these reasons appellant believes that she is entitled to a re-hearing of her said cause by this court, and respectfully prays that the same be granted